Argument is not to exceed 15 minutes per side. Mr. Morgenroth, for the appellant. Good morning, Your Honor. It's Jeffrey Morgenroth on behalf of the appellant. I wish to reserve five minutes for the appeal.  reserve five minutes for the appeal. Your Honor, the district court's dismissal of the plaintiff's complaint was infected by two fundamental errors that led to an incorrect result. First, the district court refused to consider the written representations that were set forth in letters that were prepared, signed, and sent by the defendant, Paul Blavin, to the plaintiff. The district court explained that because the defendant was a corporate representative and had been acting and working for the corporation, or the limited partnership, at the time, those representations couldn't be considered individually. Second, the district court held that all the claims were barred by virtue of a written contract, the limited partnership agreement. However, the district court did not address the undisputed fact that the defendant was not a party to that contract and had no obligations thereunder. So what the plaintiff is asking here for, the appellant, is to correct those fundamental errors, to reverse the dismissal, to remand back to the trial court for discovery to commence, and for pre-trial proceedings to be pursued leading up to a dismissal. So starting with the first fundamental error, and that's the representations that were set forth in these letters that were prepared, signed, and sent by the defendant. So paragraphs 25 through 33 of the complaint specifically reference the representations contained in the written letters, and the dates of the letters, as well as specific quotations from the letters that are set forth in the written letters. And then those representations are incorporated into paragraphs 53, 69, and 84 of the complaint. The district court only considered the general allegations, paragraphs 19 through 24, did not consider the paragraphs 25 through 33, which had these written representations referenced, nor paragraphs 53, 69, or 84, which incorporated those written representations into the counts. So what was the district judge's reason for doing this? Well, the district judge's reason for doing this was that the plaintiffs are liable for their torts that they personally commit, even while they're acting on behalf of a corporation, and even if the corporation is liable as well. Now, you're calling it a corporation. Was it a corporation? Well, there were two entities here. One was a limited partnership, which Mr. Blavin was not a limited partner nor a general partner. The second one was Blavin and Company, Inc., which was a corporation that was the investment manager, which Mr. Blavin controlled, but was a shareholder. There was also a general partner, which Mr. Blavin was associated with, Preservation of Capital Management, which was an LLC. So all of these entities were involved in the transactions and the investments. Mr. Blavin had no personal obligations except for the representations that he made personally. And the law is clear, he's not immunized or shielded from any torts that he engages in on behalf of Blavin and Company, Inc., which was a corporation, or the LLC, Preservation of Capital Management, or the limited partnership. And essentially, the district court's reasoning would immunize and allow any representative of a corporation, a limited partnership, an LLC, to not be responsible for any of their actions, even if their actions were tortious. We've cited numerous cases that recognize and confirm the non-controversial rule that an individual, even while he or she is acting on behalf of a corporation, is not liable as a general partner. The general partner of a corporation or an entity is liable for their torts, and that's even if the corporation or the entity is liable as well. So what would be, if you had to pick one case as the best case supporting your position, which would it be? Well, there's a series of cases in Michigan. I mean, first of all, there's the Mayer v. Milad case, which is a Sixth Circuit case, 1993, which makes clear that corporate officers are not required to speak, but once they do, they have to speak truthfully. And if they do speak, they're liable for their torts. But in the state of Michigan, and this is based on Michigan law, there's the Appletree Marketing case, which is a Michigan Supreme Court case, 485 MISH 1, that's 2010. We cited to that, we cited the foremost insurance case, which is 439 MISH 378, and we cited to that, we cited to that, we cited the foremost insurance case, which is 439 MISH 378, the Warren Tool Company case, 11 MISH App 274, the Trail Clinic PC case, that's 114 MISH App 700. All these cases stand for the same proposition, that agents and officers of a corporate entity are liable for their torts, which they personally commit, even if in doing so, they act for the corporation, and even though the corporation is liable as well. We also cited to specific examples where corporate officers or agents were held liable. The West Hills Farms case is a Sixth Circuit case, which found that both, and affirmed, that both the corporate officer and the corporation itself were liable for the torts that were committed by the corporate agents and officers through misrepresentations. It's a fraud case. We cited to a Michigan case like that, the Cater-Holmes case, which the corporate officer was found by a jury to not have acted individually, but acted on behalf of the corporation, and he was found liable for those torts, even though he was acting in the capacity as a corporate agent. Moving on to the second fundamental error, and that is the misrepresentations. The misrepresentations are the finding by the district court that there was a contract that existed, and that would bar the claims. There was no contract in existence between Mr. Blavin and the plaintiff. There was only a limited partnership agreement, which was between the limited partnership and the general partner, which was an LLC, and the plaintiff. Mr. Blavin has admitted in his papers to the district court that he had no contractual obligations and no duties under the limited partnership agreement personally that were owed to the plaintiff. But yet the district court found that the existence of that limited partnership agreement barred the fraud and misrepresentation claims, as well as the promissory estoppel claim and the unjust enrichment claim. So suppose hypothetically that you have a person who's the plaintiff dealing with a company who's the defendant, and there is a contract between the two, the plaintiff and the defendant in that hypo, and you have another person whose sole role is doing things for that corporation. Are there cases that say that that person doing things for the corporation can be sued with regard to things that it does for the corporation, notwithstanding the presence of a complete contractual remedy against the corporation? Well, I think what the cases say is that if that individual makes representations that are false, and those representations are acted upon by the plaintiff, then that person is not subject to prosecution. If that individual makes representations that are not acted upon by the plaintiff, that defendant is liable. In terms of whether that contract serves as a bar to any of the tort claims, there is no case that has been cited by Mr. Blavin that stands for the proposition that a contract between a plaintiff and a third party can be used to bar misrepresentation claims against Mr. Blavin. There's no case that has been cited by Mr. Blavin that a contract between the plaintiff and a third party can be used to bar quasi-contract claims against Mr. Blavin, like promissory stop on unjust enrichment. Quite the contrary, every single case that's been cited by Mr. Blavin where a contract has served as a bar to claims was a contract, involved a contract, between the plaintiff and the defendant. Every single case cited in this appeal, and in front of the district court, involved contracts where the plaintiff and defendant were parties to them. There's not one case that has been cited where a contract where the defendant wasn't party served as a bar to any claims, whether it's a quasi-contract or a fraud claim. And here... We would, I would think we'd be looking for express promises or definite promises that the defendants were, I mean, that your client would be, would have been asked to rely upon. Otherwise, we'd simply look to the contract, any pertinent contracts that would cover the dealings and the claims. What were the definite promises that your clients were invited, wrongfully invited to rely upon? Yes, Your Honor, the context of the representations were made between Mr. Blavin, who was personal friends with the brothers that formed DBI Investments, and Mr. Blavin solicited them to make investments through his investment vehicles. And they personally relied upon Mr. Blavin, and they only were involved in this situation because they trusted Mr. Blavin. They were boyhood friends for, from years and years, and very close, best personal friends. And Mr. Blavin made representations about the investment philosophy that he was going to be, that he was and was going to be implementing. It was his investment philosophy, and what he made representations, it was a value-based investing. Long-term capital preservation, long-term capital appreciation, buying debt and securities that were publicly traded, that were viewed by Mr. Blavin as being undervalued. And they would be bought based on their intrinsic value, and his theory was that value will win out in the long run, and you need to have patience and not short-term results. So he had a lot of representations as to the nature of the investment philosophies. Then he also had representations as to his continued involvement. The limited partnership agreement had no requirement that he be involved, but his representations that were made to the... Of course, for a promissory stop and all that, you're not giving us a specific express promise that he made and violated. And then you've got the problem that he stayed with this company, this partnership, for 14 years, and I don't think he's going to go back. I don't think he promised to stay there forever, necessarily, and the contract does have a provision for dissolving the partnership. So in light of all that, aren't those factors against your argument? I don't believe so, Your Honor. There were time horizons that were represented by Mr. Blavin that were not in the limited partnership agreement or anywhere else. He represented that the investments that were made in 2007-2008 had a five-year time frame, the ones in 2007. The ones in 2008, a three- to five-year time horizon, and yet he walked away one year later. Why couldn't they keep on with those investments? Because Mr. Blavin unilaterally liquidated the investments and sent their money back. Why couldn't they have objected to that? I don't know how they could have objected to it. He sent a letter and said, this is what I'm doing, and he sent the money back to them. Had he liquidated the investments before he told them he was going to liquidate them? No. He personally confided in the Israels at a meeting, I don't know if he did with any of the other limited partners, but because of this close relationship, he personally met with them and admitted that he was walking away and leaving them high and dry. He actually admitted that he was acting contrary to his representations, that there's a performance bonus that was to be paid. The performance bonus was to be paid, it was a threshold based on the United States Treasury return plus one year, plus any losses that had been accumulated in the past. There were so many losses that had been accumulated that he felt that he couldn't end up getting a performance bonus for many years, and he'd be working for peanuts. It's undisputed, he was working very hard, but he didn't want to work that hard for peanuts. Thank you, your red light's been on for a long time, we've taken you over, so thank you very much. Good morning, judges. My name is Scott Hamilton, I am counsel for the defendant, Appali Paul Blavin. Unless anyone has any different direction that they'd like me to take, what I propose doing is responding to a few of Mr. Morganroth's arguments and then making a few additional points that are set out in the brief. If I could, I'd like to start, Judge Clave, with your question about the identification of any kind of definite and distinct promise that the plaintiffs were invited to rely upon. One of the things that the district court held in this case was that there was no statement or representation sufficient to support either a claim for promissory estoppel or for negligent misrepresentation. And I think Mr. Morganroth's inability to articulate a definite and distinct statement or promise illustrates the propriety of the district court's opinion. There simply wasn't any. There were statements about Mr. Blavin's investment philosophy, there were statements about the commitment to long-term valuation of the things that they invested in, that they would have time horizons, various things of that sort. Sorts of things I would submit that any valid investment professional would view as being philosophically sound investment principles. Setting that aside, there is not a single allegation that Mr. Blavin made and the plaintiffs relied upon any statement of the kind that the partnership would always be in existence for a particular length of time. There's no allegation that Mr. Blavin said, if you invest in these investments for which I view there to be a three- to five-year time horizon, I promise that the partnership will remain in existence for a very long time. I don't understand, and my last question to your opponent was getting at this, why did your client liquidate the partnership as opposed to saying, I want to stop being involved, here is the partnership with all the assets there, you can do what you want with it. He did exactly that. He announced, well, I want to go back to the contract, the contract provides that the partnership, PWB Partners, is dissolved upon several things. One of them is when the general partner ceases to be the general partner. The general partner has the unfettered right at any time to withdraw from the partnership simply by giving notice, and that's undisputed. And that is what Mr. Blavin did. He was withdrawing from the general partnership, dissolving it. He held several positions. He was the principal of the Preservation of Capital Management, LLC, which was the general partner of the partnership. That was the principal of the general partner. Yes, and Plaintiff affirmatively alleges that Mr. Blavin controlled that entity, and he did, it was his company, he made all the decisions, he had all the discretion to make business decisions, and that sort of thing. So by the principal resigning, then the general partner ceases, is that the theory? I think that technically under the operating agreement, what happened was when Preservation of Capital Management, LLC, withdrew as the general partner, under the partnership agreement, the partnership dissolved. Unless, and Judge Moore, this gets to the question you're asking, unless a limited partner, which would include Plaintiff DBI, calls for a vote to continue it. Now in March of 2009, they had every right under the partnership agreement to call a vote. And they could have voted. They could have called a vote before the assets were sold? Yes. Time-wise, now this is a motion to dismiss, am I right? Yes, it was a 12B6 motion. So this is all in the complaint? I'm sorry. Outside of the record stuff? No, the only things that were outside of the complaint were still in the record, they were documents that were referenced in the complaint and specifically referred to. But to answer your question very pointedly and specifically, Judge Moore, when Mr. Blavin announced that he was going to withdraw as the general partner, they had every right under, the plaintiff, had every right under the partnership agreement to call a vote to continue that partnership. That's found in section 12.2, which is at document number 5-2, page ID 171 to 172. That's the part of the partnership agreement that gives them that right. They simply didn't exercise it. No one called a vote to continue the partnership. They simply accepted his statement, Mr. Blavin's statement, that he no longer wanted to work in this capacity anymore. He wanted to essentially retire and spend time with his family. They had the right to call a vote. They didn't do it. And in fact, they sat on their hands for four years before they even stirred to take issue with the dissolution of the partnership. So the essence of your opponent's argument is that Blavin was not a party to the contract and Blavin did some independent torts, like fraud, and he should be able to be held liable for that. How would you respond to that? A couple of ways, Your Honor. Number one, there's no dispute that Mr. Blavin individually did not sign the partnership agreement. In fact, it was signed by a gentleman named Michael Spalter, who was in association with Preservation of Capital Management. The partnership agreement was between the following two entities, DBI, Inc. and Preservation of Capital Management, LLC. Paul Blavin, as an individual, is not a party to that contract or any other contract, although he is the controlling member of each of these corporations. Now, the response to that question, Your Honor, which is, how can a third party to a contract assert the existence of an express contract as a bar to a tort claim alleged by the plaintiff and a non-party to the contract? The answer to that is several-fold. Number one, Michigan's interpretation of the economic loss doctrine, which is essentially a species of what we're arguing here, that is, that if there is a contract, you are relegated to the contract terms and cannot independently allege fraud on top of it. The Michigan Supreme Court has expressly held that privity of contract is not a requirement in the... What case is that? The main case that I'm aware of in Michigan is a case called Sullivan, which is at 480 NW... I'm sorry, 480 MISH at 627. And that expressly holds that in the context of the economic loss doctrine, privity of contract is not necessary. I don't know whether that completely and totally answers the question in this case, but what does completely and totally answer the question is the following. DBI had a relationship that was undisputedly governed by a contract with Preservation of Capital Management. They had rights under that agreement that they could assert against Preservation of Capital Management that they failed to exercise. They sat on their hands, and it's only because they didn't exercise their rights under that contract that they're now in the position of pointing the finger at Mr. Blavin individually because they can't sue Preservation of Capital Management. That claim was time-barred. It's subject to the Delaware Statute of Limitations, which had expired by the time they actually got around to it. Hypothetically, let's assume that there's a contract between a plaintiff individual and a corporation. There's a contract, but there's somebody who's working for the corporation who commits fraud and who causes the plaintiff individual to do something with that corporation. And hypothetically, let's say the corporation is judgment-proof, why shouldn't the plaintiff be able to sue the person who committed the fraud? I think in that context, Your Honor, I don't think we have any issue that that's a correct application of law. Then why isn't that the case here? For quite a few reasons. Number one, Mr. Blavin was not some sort of independent third party who engaged in some sort of tortious... No, the theory is he was doing this to get them to put money into this preservation... Into the partnership. PWB Partners is what the allegation is. That's exactly right. And he was doing that in the capacity of operating the general partnership. That's what the partnership was involved in doing. And the situation that you're describing in your hypothetical, Judge Moore, I think it's fundamentally different from what's going on here. If you had a third party who was not directly party to the underlying contract that we're hypothesizing, who engaged in some sort of tortious activity that damaged the plaintiff, that was not governed by the contract between the plaintiff and the entity that they were dealing with, that may very well give rise to independent tort liability independently of the contract. But here, the relationship between the plaintiff and preservation of capital management and Mr. Blavin, even though Mr. Blavin wasn't a party to the contract, the actions that DBI is complaining of, that is, lulling them into investing or telling them that Mr. Blavin had various investment philosophies and principles, can't be separated or divorced from that relationship. I guess I'm having trouble agreeing with that principle. If Blavin, hypothetically Blavin, lies and commits some kind of fraud that causes these plaintiffs to invest in preservation, why shouldn't Blavin be held liable for that fraud, independent of whether the plaintiffs can sue preservation? Well, you'd have to get around a couple of fundamental barriers, I think. As a general proposition, I don't think there's any dispute that tort liability can attach independently of a corporation, and even if an individual is acting on behalf of a corporation, under the proper circumstances, they can be held independently liable in tort. Michigan law is fairly clear on that. On the facts of this case, there are a couple of fundamental hurdles that I don't think he can surmount. First of all is what we started this argument with, which was, where is the statement of fraud? Where are the misrepresentations? Where is the actionable conduct that's alleged against Mr. Blavin? The case falls down on its feet at that point, because there is nothing that the plaintiff has either alleged in the complaint, argued to the district court, or has said here at oral argument, specifically responding to a question to do so, that sets out any misrepresentation of existing fact, past fact, or anything that would be actionable. That's a different argument. It is. It is a different argument that the existence of the contract between the plaintiffs and preservation precludes there being any fraud claim against Blavin. You're right, Your Honor. It is a different argument, but it's a threshold argument. What I'm saying is even before you get to that consideration, there simply isn't any actionable conduct. And what would you say is the best case? Is it the Sullivan case to say that your point that plaintiffs can't sue Blavin for fraud because there's a contract? Sullivan is the case? Sullivan specifically stands for the following proposition, that Michigan's economic loss doctrine, that is the idea that a party that has a contract cannot recover both breach of contract remedies and independent tort claims or tort damages, does not require privity of contract. That is a foreigner to the contract is subject to the application of the doctrine. Did you cite Sullivan in your brief? I don't believe that it's in the brief. I think this issue was really developed more in the reply brief. It's kind of inherent in the whole argument, but I don't think we specifically cited that proposition. That's what that case stands for. Unless there are any additional questions about what I've covered so far, there is one other point that I'd like to highlight in the approximately minute and a half that I have left. And that is to step back for a moment, which is what we try to do in our brief on appeal, and take a look at what plaintiff is actually doing here. They forfeited the right to sue the actual entity that probably should have been sued because they waited too long. Their arguing and the gravamen of their complaint is that Mr. Blavin prematurely terminated this partnership, that he did it unilaterally and without notice, and he should have kept on for some indeterminate amount of time, is their theory. The Michigan Partnership Statute, the Uniform Partnership Act, very clearly says that a general partner has an unfettered right to terminate the partnership without liability, either for violating a partnership agreement, and as the Urbane case that we cite says, you can't add tort claims onto that either. In other words, a party who is disgruntled, a disgruntled partner who is angered that a general partner has sought to dissolve the partnership, can't complain that it was dissolved prematurely, because partners under Michigan law always have the right to dissolve it. And that's clear in the partnership agreement as well. Mr. Blavin, as the principal of the general partner, had at all times the unfettered right to be able to withdraw as the general partner simply by giving notice, which is exactly what he did. And the attempt by the plaintiff in this case to ascribe tort liability for the early termination of a partnership simply isn't actionable under Michigan law. I would point out, and I've pointed out in our brief, this argument was not expressly made to the district court, nor did the district court rule on it. But I believe that it is an independent basis upon which the entire case can be affirmed simply because what the plaintiff is attempting to do is contrary to Michigan law in the cases that have applied it. Your Honors, I'd first like to address this argument that there was no definite statement or representation pled in the complaint, and that's just not accurate. Paragraphs 19 through 24, paragraphs 25 through 33, paragraphs 53, 69, and 84 have 11 categories of representations that are definitive. The district court refused to consider paragraphs 25 through 33, 53, 69, and 84, which for the reason that there were written letters, which the district court felt couldn't be considered based on this viewpoint that a corporate officer can't be held liable for representations made while acting on behalf of the corporation. These representations were clear and definitive. They were about investment principles, which were specifically set forth in the written letters. Mr. Blavin's involvement, his management philosophy, his involvement in terms of compensation... Did he ever say, I am going to stay here for five years, or something to that effect? An explicit promise to stay for a certain amount of time? His promise was that he would work during the good times and the bad times. When there was no performance bonus fee, he would work based on the threshold. When there was a high performance bonus fee, he would work. He did work during the good times. When it got to the bad times, he no longer was willing to work and put the time in. He only decided that he would keep the money he had earned for the good times and no longer work during the bad times. When the market went south and that he was going to be in a position where he wouldn't be able to receive performance bonuses for years to come, he admitted in a personal meeting with the plaintiff that he was not going to do that. He was not going to work for peanuts. That's contrary to his representation. It just seems so odd that your clients would want somebody to continue on if the fellow doesn't want to work anymore. Why on earth not hire somebody else to be the manager? I think there's a disconnect in what happened. The general partner never withdrew. There's a March 2, 2009 letter that was written, and that's part of what's quoted in the complaint. That letter doesn't say the general partner of Preservation of Capital LLC is withdrawing. This is Paul Blavin writing the letter and signing it. I have decided to liquidate our partnership and return your capital to you. He never said that the general partner was withdrawing and therefore you have the opportunity to find another general partner. He didn't say anything of the sort. He didn't say that I'm withdrawing and the general partner is still there, Michael Spalter, and there were others that were part of that. In fact, he says to them, why don't you go and invest with someone else? This wasn't a situation where they weren't liquidated and they had an opportunity to vote. The problem with liquidating was that they had all these losses, right? The problem with liquidating was that it was at the worst, lowest time in the market. When they got the letter from Blavin saying, I am going to liquidate? He said, I have decided to liquidate our partnership, you'll receive your money. Okay, wouldn't the normal prudent investor at that point immediately send a letter, I do not want you to sell the stocks now at the bottom of the market? Well, they had the impression that he already sold the stock and that would be a question of fact. We're in a 12B6 motion, that would be a question of fact, whether or not they did anything to mitigate their damages, whether they reasonably relied on the representations. But what's plot in the complaint is that they understood that he had liquidated the entire portfolio. That's not what the letter says. The letter says, I have decided to liquidate our partnership and return your capital to you. That's the opening line of it. Right, I've decided to do that doesn't mean he's done it. Well, a few months before this, he had met with the plaintiff at this personal meeting at the Townsend Hotel in Michigan. And he represented that he was already doing that. So when they got the letter, they understood that this was done. He met at the end of fiscal 2008 with the two Israels to confide in them. There was a close personal relationship. He took them aside and said, look, I'm doing this, I'm sorry, I'm leaving you high and dry, but I'm liquidating. So they didn't think they had any choice at that point and they thought it was done. Just one thing on Sullivan, the economic loss doctrine doesn't apply to this case. I understood that's why it wasn't cited in any of the briefs. The economic loss doctrine applies on a UCC case. Sullivan is a UCC case, this is not a UCC case. There were no goods that were involved in this. One final point in terms of whether he would stay on or not. You've got in 2007 there was a representation that the time horizons of these investments were five years, and in 2008, three to five years. It was not an indeterminate amount. The plaintiff understood that the investments would at least go through 2013, but yet the liquidation took place at the end of fiscal 2008, a mere matter of months after the representation. Thank you.